UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:25-CR-309 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| YOUSIF ABDULRAOUF ALHALLAQ, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter is before the Court on Defendant's Motion to Revoke the Magistrate Judge's September 5, 2025, detention order and to place the Defendant on bond. (ECF # 21). For the following reasons, the Court **DENIES** Defendant's Motion.

**I.     BACKGROUND**

On June 25, 2025, Defendant was charged in a two-count Indictment with Naturalization Fraud, in violation of 18 U.S.C. 1425(a). (*See* ECF # 1). At the time the Indictment was filed, Defendant was serving a four-year state sentence for Attempted Murder and two counts of Felonious Assault. (ECF # 1 pg. 1). On July 7, 2025, Defendant waived his right to a detention hearing and reserved his right to revisit the issue of detention at a later date should circumstances change. (ECF # 9). Defendant filed a Motion for Bond on August 25, 2025, suggesting that because he had completed his state sentence, circumstances have changed. (ECF # 16).

The Magistrate Judge held a detention hearing on September 4, 2025. (*See* ECF # 23). The Magistrate Judge evaluated the four factors under 18 U.S.C § 3142(g) and found that no conditions or combinations of conditions would reasonably assure the safety of any other person and the community. (ECF # 19 pg. 4). Specifically, the Magistrate Judge reasoned that the

evidence of Defendant's dangerousness is strong and that the nature and seriousness of the danger to any person or the community posed by Defendant's release weighs toward detention pending trial. (*Id.*).

On November 13, 2025, Defendant filed his Motion to Revoke the Detention Order. (ECF # 21). The Government filed its opposition on December 4, 2025. (ECF #24). Defendant filed a Reply to the Government's opposition on December 18, 2025. (ECF # 26).

## II.  LAW AND ANALYSIS

Defendant rightfully asserts that a district court may conduct a de novo review of a magistrate judge's decision to detain under 18 U.S.C. § 3145(b). *United States v. Alexander*, 742 F. Supp. 421, 423 (N.D. Ohio 1990). By doing so, the district court conducts the same analysis with the same options under 18 U.S.C. § 3142 as the magistrate judge. *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000).

Defendant contends there are multiple reasons why he should not be considered a flight risk or a danger to the community, including his ties to the Northern District of Ohio, future employment, familial support, a state parole officer's approval of a residence for him to reside in upon release and his lack of incident reports or behavioral concerns while serving his state sentence. (ECF # 21 pg. 2). The Government points to Defendant's underlying violent offenses that led to the naturalization fraud charges, his foreign ties, his untrustworthiness and the danger he poses to his ex-wife, referred to as Victim 1, who has a civil protection order against Defendant. (*See* ECF # 24). The Government further asserts that Defendant's Motion is untimely under Rule 59(a) of the Federal Rules of Criminal Procedure. (*Id*. pg. 8-10).

### A.  Timeliness of Motion

A defendant's right to have the court with original jurisdiction review a detention order is waived if the appeal is not taken within fourteen days as dictated by Fed. R. Crim. P. 59(a). *United States v. Dawson,* No. 19-cr-206, 2020 U.S. Dist. LEXIS 103060, at *2 (N.D. Ohio June 12, 2020). The Magistrate Judge issued the detention order on September 5, 2025. (ECF # 19). Defendant filed his Motion to Revoke Detention Order under § 3145(b) on November 13, 2025, well beyond the 14-day appeal period. Thus, Defendant's time to seek review of the detention order by this Court has passed.

Because the Defendant may no longer object to the Magistrate Judge's detention order, the detention order may be modified only if this Court reopens the detention hearing pursuant to 18 U.S.C. § 3145(f). A district court *may* reopen a detention hearing based on changed circumstances, however, the new information must have been unknown to the movant at the time of the hearing and must have "a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of any other person in the community." *United States v. Watson*, 475 Fed. App'x 598, 600 citing § 3142(f)(2)(B). "In other words, the new information must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *United States v. May,* 2020 U.S. Dist. LEXIS 83927, *4-5.

Here, Defendant does not provide any new information that was unknown to him at the time of the initial detention hearing. Instead, Defendant reiterates arguments regarding flight risk and dangerousness based on the § 3145(g) factors. (*See* ECF # 21).

Accordingly, because Defendant waived his right to § 3145(b) review and has failed to present grounds sufficient to reopen the detention hearing under § 3145(f), the Court declines to do so.

**B. 18 U.S.C. § 3142(g) factors**

Although the Court concludes that the Motion is untimely and procedurally barred for the reasons stated above, the Court nevertheless addresses the § 3142(g) factors in the alternative.

Under § 3142, "a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) citing § 3142(e).  A finding of dangerousness must be "supported by clear and convincing evidence." *Id.* citing § 3142(f)(2)(B).  A finding of flight risk must be proved by a preponderance of the evidence. *United States v. Hinton*, 113 Fed. App'x 76, 77 (6th Cir. Sept. 20, 2004).  Accordingly, the default position "is that a defendant should be released pending trial." *Stone*, 608 F.3d at 945.

1. Nature and Circumstances of the Offense Charged

The nature and circumstances of the offense charged weigh in favor of detention.

§ 3142(g)(1) requires the Court to consider "the nature and circumstances of the offense charged.  Here, the charges involve intentional dishonesty in a formal federal proceeding, including written statements made under penalty of perjury.  The evidence presented at the detention hearing reflects that Defendant knowingly concealed material information while seeking the benefits of United States citizenship.  Such conduct bears directly on Defendant's willingness to comply with legal obligations and court-imposed conditions.

Further, Defendant surreptitiously administered an abortion drug to Victim 1, causing his child to be born with severe medical problems and he concealed that conduct for seven years. (ECF # 24 pg. 2).  Although the instant charges are non-violent, Defendant's demonstrated pattern of calculated deception and concealment is significant.

4

Accordingly, the Court finds this factor weighs in favor of Defendant's detention.

2. Weight of Evidence Against the Defendant

The weight of the evidence favors detention.  This factor concerns the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt.  *Stone*, 608 F.3d at 948 citing *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (§ 3142(g) "neither requires nor permits a pretrial determination of guilt").

Defendant previously pled guilty to the felonious assault of Victim 1 and attempted murder of their unborn son.  Victim 1 obtained a protection order and testified that she and her son are at risk of imminent and serious physical harm from Defendant.  (ECF # 24 at pg. 14). Defendant attempts to minimize the significance of the protection order, arguing that it reflects Victim 1's fear, rather than being evidence he poses a danger to her or their son.  (*Id.*). Defendant insists, "because there is no evidence that Defendant has harmed any other individuals, he focuses the analysis on the Government's failure to show that he poses any danger that cannot be mitigated by conditions to his ex-wife and son."  (ECF # 21 p. 5).

The Court finds these arguments unpersuasive.  Violent convictions and a civil protection order arising from Defendant's conduct toward Victim 1 are directly relevant to dangerousness. Defendant's bare assertion that he did not violate court orders during prior periods of incarceration or release does not meaningfully diminish the weight of this evidence and is an insufficient argument for the Court to consider.

Accordingly, the Court finds this factor weighs in favor of Defendant's detention by clear and convincing evidence.

3. Defendant's History and Characteristics

In considering the history and characteristics of Defendant, the Court considers:

5

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal or competition of sentence for an offense under Federal, State, or local law.

18 U.S.C. § 3142(g)(3)(A)–(B).

Defendant relies on his ties to the Northern District of Ohio, familial support and potential employment. He proposes to live with friends if released. (ECF # 21 pg. 2). Defendant, who was born in Kuwait and is a citizen of Jordan, entered the United States in 2006 to work as a medical doctor. (ECF # 24 pg. 2). Defendant argues his history and characteristics, "demonstrate a dedication to bettering himself and immense support from his community." (ECF # 21 pg. 4). Defendant avers that there is no evidence to show he will not comply with court orders and that he continues to be a "model individual." (*Id*. pg. 6). However, Defendant fails to address the biggest factors weighing against his release.

The charged offenses involved intentional dishonesty in formal federal proceedings, including written statements made under penalty of perjury. The evidence presented at the detention hearing reflects that Defendant knowingly concealed material information while seeking the benefits of United States citizenship and later omitted truthful information regarding his financial circumstances. These were not isolated misstatements, but deliberate acts designed to obtain personal benefit through deception. Such conduct bears directly on Defendant's credibility and willingness to comply with court orders and conditions of release, which themselves depend on truthful self-reporting.

Further, the Court cannot ignore Defendant's prior violent conduct, which reflects a profound breach of trust and informs the seriousness of the instant offenses. Defendant

6

concealed his violent actions towards Victim 1 for seven years, during which time he continued a relationship with Victim 1, witnessed the consequences of his conduct and continued to withhold the truth.  This conduct is not impulsive; it required planning, concealment and sustained deception that the Court cannot overlook.

The Court also considers Defendant's financial resources.  Testimony from Defendant's sister at the detention hearing establishes that she served as his Power of Attorney, communicated with him regularly, managed his affairs and set aside substantial funds for his benefit. (ECF # 23 pg. 19–23).  She stated she was working with Defendant to help with his decision-making, to wind down his medical practice and to take care of all of his business matters while he was incarcerated. (*Id*.).  "We've been on the phone… very regularly and I have visited him, I'd say about once a month." (*Id.*).  "I personally have been, you know, preparing, you know, throughout his sentence by setting aside money financially to help him… I've set aside funds for him to help support his living expenses for the next you know, year or two as he gets back on his feet." (*Id.* at pg. 20).  When pressed, she acknowledged that there is somewhere between $70,000 to $90,000 in accounts that he has access to and are in his name. (*Id*. at pg. 24).

Defendant's explanation that he was unaware of his finances because of incarceration is not persuasive in light of this testimony and his level of education. (*Id*. at pg. 39).  It is almost inconceivable that a highly educated person such as Defendant, with mere months left on his sentence from his state conviction, would not have any indication of how much money he had waiting for him upon release, after the sales of his properties and winding down of his medical practice.  His sister testified how close the two of them are, how often they communicate and the nature of her role as his power of attorney.  It is difficult for the Court to believe that Defendant's financial resources were never discussed during one of their many phone calls or meetings.

7

Defendant's history and characteristics are significant factors that suggest both dangerousness and a risk of nonappearance. Defendant's persistent lack of candor does not illustrate a "dedication of bettering himself" nor does it show that he is a "model individual." (ECF #21 pg. 4, 6). Defendant's familial support, potential employment and proposed living situation do not outweigh his risk of flight when considering his criminal history, unreported financial resources, foreign ties and potential removal after serving his sentence for the instant offense. The Court is not inclined to trust a habitually deceptive individual.

Accordingly, the Court finds this factor weighs in favor of Defendant's detention by a preponderance of the evidence.

4. The Nature and Seriousness of the Danger to Any Person or the Community

The final factor also favors detention. § 3142(g)(4) requires the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Defendant argues that the Government cannot show by clear and convincing evidence that he is a danger to any person or to the community and any risk he poses could be mitigated by conditions of release. (*See* ECF # 21). Defendant avers that a protective order cannot be the only reason he is considered dangerous, nor is it evidence he would ignore the order. (*Id*.). He further minimizes the significance of the active protective order throughout his Motion and Reply to the Government's opposition. (*See* ECF # 21, 26). Defendant urges the Court to consider that his violent actions towards his wife and unborn son do not mean he would be violent towards the community, because he has no prior violent convictions other than his attempted murder and felonious assault convictions. (*Id.*).

Despite Defendant's pleas to the contrary, § 3142(g)(4) does not require that a Defendant commit multiple offenses or widespread harm to establish dangerousness. Defendant's prior

8

violent convictions and prolonged deception concerning the violent acts committed against those closest to him further informs the Court's assessment. The Court cannot conclude that conditions of release would reasonably assure the safety of others where Defendant has repeatedly demonstrated an ability to deceive, conceal and manipulate to his own advantage. Defendant's claim that he should not be considered a danger to Victim 1 or their son is nonsensical.

Accordingly, the Court finds this factor weighs in favor of Defendant's detention.

### III.   CONCLUSION

Defendant's Motion to Revoke Detention is untimely under Fed. R. Crim. P. 59(a), and Defendant has not presented new or material information warranting reopening of the detention hearing under 18 U.S.C. § 3145(f).

Alternatively, upon *de novo* review, the Court finds the § 3145(g) factors heavily weigh in favor of detention. The Government has established Defendant's dangerousness by clear and convincing evidence and his risk of flight by preponderance of the evidence. No condition or combination of conditions will reasonably assure Defendant's appearance or the safety of the community.

Accordingly, Defendant's Motion is **DENIED.**

**IT IS SO ORDERED.**

s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: January 21, 2026**